THE HONORABLE JOHN C. COUGHENOUR

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>ROSIE CASTANEDA,<br><br>Defendant. | CASE NO. CR11-0415-JCC<br><br>ORDER |

This matter comes before the Court on Defendant Rosie Castaneda's motion to correct her sentence due to clear error. (Dkt. No. 702.) Having thoroughly considered the parties' briefing and the relevant record, the Court finds oral argument unnecessary and hereby DENIES the motion.

I.   **BACKGROUND**

On May 21, 2013, the Court sentenced Defendant Rosie Castaneda to a 108 month term of incarceration to be followed by four years of supervised release. (Dkt. No. 700.) This sentence followed Ms. Castaneda's conviction by guilty plea to the charge of Conspiracy to Distribute Controlled Substances in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(B), and 846. (*See* Dkt. No. 661.) In Ms. Castaneda's plea agreement, she admitted to playing an integral role in a widespread criminal drug trafficking organization based in Bellingham, Washington ("Hamilton DTO"), which was led by Todd Hamilton and involved numerous individuals, including thirteen

other individuals charged in the instant matter. Specifically, Ms. Castaneda admitted to both supplying and distributing heroin and methamphetamine while working with members of the Hamilton DTO. According to the agreement, Ms. Castaneda admitted that the amount of drugs she delivered or had delivered exceeded 50 grams of a mixture or substance containing methamphetamine and exceeded 100 grams of a mixture or substance containing a detectable amount of heroin; indeed, during some of the intercepted telephone calls involving Ms. Castaneda, she "purchased for re-sale at least 19 ounces of a mixture containing methamphetamine (approximately 475 grams) and nine ounces of heroin (approximately 225 grams)." (Dkt. No. 661 at 5.) Further, on December 19, 2011, law enforcement agents searched Ms. Castaneda's home pursuant to a search warrant, where they located approximately .34 grams of a mixture containing methamphetamine, as well as other indicia of drug trafficking. (*Id.*)

At the May 21, 2013 sentencing hearing, defense counsel requested a sentence of 84 months, which the United States Probation Office also recommended. (Dkt. Nos. 696, 690.) The United States sought a sentence of 144 months. (Dkt. Nos. 693.) As the Court concluded at the hearing and the Probation Office had previously calculated, Ms. Castaneda's total offense level was 31 and her criminal history category was 6, giving an advisory guidelines range of 188 to 235 months and supervised release range of four to five years. (Dkt. Nos. 690, 702-2.) Notwithstanding this advisory range, the Court imposed a below-guidelines sentence of 108 months and supervised release term of four years months after considering the factors of 18 U.S.C. § 3553. (Dkt. No. 702-2 at 11.)

Ms. Castaneda now requests that the Court correct the 108 month sentence due to "clear error" under Federal Rule of Criminal Procedure 35(a), based on a comment made by the undersigned at the sentencing hearing regarding recorded statements made by Ms. Castaneda. (Dkt. No. 702.) Because the Court does not agree that Ms. Castaneda's sentence is clearly erroneous, it declines to modify her term of incarceration or supervised release.

//

## II.  **DISCUSSION**

Federal Rule of Criminal Procedure 35(a) provides that a sentencing court "may correct a sentence that resulted from arithmetical, technical, or other clear error" within 14 days after the sentencing. FED. R. CRIM. P. 35(a). This rule is intended to allow a district court to modify a sentence "only in very limited instances and not merely to 'reconsider' sentencing issues." *United States v. Barragan-Mendoza*, 174 F.3d 1024, 1028 (9th Cir. 1999) (addressing Rule 35(c), which was amended in 2002 and is now reflected in Rule 35(a)). Here, Ms. Castaneda points to no arithmetical or technical error in the calculation of her sentence, but instead argues that the Court's sentence is clearly erroneous. Specifically, Defendant points to the Court's comments regarding recorded telephone calls in which Ms. Castaneda made numerous comments reflecting her propensity to use violence, both personally and through the use of male individuals to "beat[] everybody up for [her]." (Dkt. No. 693, Ex. B July 26, 2011 recording.) Because the Court noted at the hearing that the calls appeared to undermine Ms. Castaneda's purported remorsefulness, she now argues that given the date of the calls—June and July of 2011—they could not possibly be used to rebut her current feelings of remorsefulness.[1] (Dkt. No. 702 at 2–3.)

Regardless of the Court's comment on Ms. Castaneda's recorded statements or how Ms. Castaneda interpreted the Court's comment, her sentence is not clearly erroneous. As explained at the hearing, the Court relied upon the factors of 18 U.S.C. § 3553(a) in exercising its discretion to impose a sentence *substantially* below the advisory guidelines range of 188 to 235 months. Specifically, the Court took note of Ms. Castaneda's extensive criminal history, the quantities of drugs that she was involved with, and the avoidance of disparity in the very large criminal enterprise at issue—each in addition to her apparent lack of remorsefulness. Further, notwithstanding the arguments of Defense counsel in the instant motion, who appears to be

---

[1] The Court also takes note that while Defense counsel now argues that the sentence is clearly erroneous, he made no objection or request to clarify this issue during the sentencing hearing.

laboring under a misapprehension about how the Court ultimately reached its sentencing conclusion, the undersigned remains unconvinced of Ms. Castaneda's remorsefulness for the instant crimes after hearing her in open court and reviewing the remainder of the evidence submitted in the Government's sentencing memorandum.

The Court now reiterates that upon consideration of the factors of 18 U.S.C. § 3553(a), Ms. Castaneda's below-guidelines sentence of 108 months is appropriate. Before turning to specific factors, however, the Court notes that Ms. Castaneda's advisory guidelines range was 188 to 235 months. Upon review of Ms. Castaneda's personal history and the recommendations of the parties and the United States Probation Office, the Court determined that a below guidelines sentence was warranted. In deciding the extent of the downward variance, the Court evaluated the § 3553(a) factors and the complete circumstances of Ms. Castaneda's offense. Contrary to what Defense counsel implies in the instant motion, however, the Court did not begin with the Defense recommendation of 84 months—because Defendant is not *entitled* to a sentence substantially below the advisory guidelines range—and only then increase Defendant's sentence according to the aggravating factors present in this case. Upon review of the § 3553(a) factors, the Court found that the 108 month sentence was an appropriate downward variance from the advisory guidelines range, and after again reviewing those factors, concludes that Ms. Castaneda's sentence is not clearly erroneous.

In reaching this conclusion, the Court placed particular emphasis on Defendant's criminal history, as well as other factors as discussed below. As noted in the United States' sentencing memorandum, Ms. Castaneda's criminal history spans more than two decades, and she has a history of distributing drugs since she was seventeen years old. (Dkt. No. 691, ¶¶ 40–69.) Further, at the time of her arrest in the instant matter, Ms. Castaneda was still under Department of Corrections' supervision; as the Government describes, while under supervision Ms. Castaneda failed to report to her DOC counselor on seven occasions and violated her terms of supervision six other times. (Dkt. No. 693, Ex. C.) Moreover, Ms. Castaneda was caught using or

possessing drugs or alcohol seven times and failed to complete treatment four times. (*Id.*) Given her extensive criminal history, the Court finds that the sentence imposed is reasonable and justified, regardless of the comments Ms. Castaneda made on the 2011 recorded phone calls.

The Court also places particular emphasis on the quantity of drugs with which Ms. Castaneda was involved and the nature of the instant offense. As admitted in her plea agreement, Ms. Castaneda both provided drugs to Todd Hamilton and members of the DTO and received drugs from the Hamilton DTO and alternative sources of supply that she then re-distributed to Bellingham area drug users. (Dkt. No. 661 at 5.) In addition to the .34 grams of methamphetamine that law enforcement agents found during the search of her residence, Ms. Castaneda admitted that she either delivered or had delivered more than 50 grams of methamphetamine and more than 100 grams of heroin. (*Id.*) Finally, in addition to the vast quantity that Ms. Castaneda admits to either supplying or distributing, the Court notes that the criminal enterprise that Defendant was involved with trafficked far larger quantities of drugs and that Ms. Castaneda had a propensity to use violence both personally and through the use of male individuals, as demonstrated by her recorded statements submitted to the Court. (Dkt. No. 695.) In light of her role in such a large-scale drug organization which had demonstrable effects on the Bellingham community, her personal responsibility for supplying and distributing vast quantities of methamphetamine and heroin, and her propensity to use violence in her actions, the Court places particular emphasis on the quantity of drugs and nature of Ms. Castaneda's offense.

Finally, the Court briefly notes that Ms. Castaneda's sentence, while longer than other defendants thus far sentenced in this matter, is consistent with those sentences given her extensive criminal history and role in the organization. For example, as the Government noted at Ms. Castaneda's sentencing hearing, Elidio Guillen was sentenced to a term of 72 months. (Dkt. No. 72.) Mr. Guillen also pled guilty to Conspiracy to Distribute Controlled Substances; however, Mr. Guillen had an extremely limited criminal history, whereas Ms. Castaneda has an extensive criminal history and has demonstrated a continued inability to stay out of trouble with

the law.  Further, the Court notes that Ms. Castaneda not only supplied methamphetamine and heroin to Todd Hamilton, like Elidio Guillen, but also re-distributed drugs on his behalf, thus rendering her role in the organization a more significant one. Additionally, the Court notes that Gary Aardema was sentenced to an eight year term of incarceration—a sentence one year shorter than that imposed upon Ms. Castaneda. However, as the parties are aware, Mr. Aardema was less involved in the drug conspiracy and admitted to dealing drugs in far smaller quantities than Ms. Castaneda. (*See* Dkt. Nos. 385; 693 at 6.) In light of the above and upon consideration of the sentences imposed upon every defendant in this matter, the Court finds that Ms. Castaneda's 108-month sentence is correctly calculated to avoid unwarranted disparity in the sentencing of individuals involved in this criminal enterprise.

### III.   CONCLUSION

Accordingly, the Court concludes that Defendant's sentence is not clearly erroneous and DENIES Defendant's motion to correct her sentence. (Dkt. No. 702.)

DATED this 3rd day of June 2013.

John C. Coughenour
UNITED STATES DISTRICT JUDGE